**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| EMADDIN A ALI KABLAN, | Case No.:  26cv2083 DMS MSB |
| Petitioner, | **ORDER GRANTING PETITION** |
| v. | |
| MARKWAYNE MULLIN, Secretary, U.S. Department of Homeland Security; et al., | |
| Respondents. | |

Before the Court is Petitioner's Petition for Writ of Habeas Corpus.  (Pet., ECF No. 1.)  Respondents filed a response, (ECF No. 4), and Petitioner filed a traverse, (ECF No. 5).  For the following reasons, the Court grants the Petition.

## I.    BACKGROUND

Petitioner is a native and citizen of Libya. (Pet. ¶ 31.) He was admitted to the United States on an F-1 visa on September 19, 2014, (*id.* ¶ 32), and he applied for asylum application on December 2, 2016 while he was in F-1 nonimmigrant status. (*Id.* ¶ 33.) On May 19, 2022, Petitioner's asylum application was referred to the Immigration Court, and on May 20, 2022, the Department of Homeland Security ("DHS") filed a Notice to Appear,

1

charging Petitioner with removability under 8 U.S.C. § 1227(a)(1)(C)(i), as a nonimmigrant overstay. (*Id.* ¶ 34.)

Petitioner works at Qualcomm Technologies, Inc. as an engineer. (*Id.* ¶ 36.) On September 20, 2024, Petitioner was detained by DHS officers at the airport in San Jose, California while traveling for a work trip. (*Id.* ¶ 37.) On November 13, 2024, an immigration judge granted Petitioner release on a $4,000 bond, with Alternatives to Detention monitoring at DHS's discretion. (*Id.* ¶ 38.) Following his release, Petitioner was enrolled in Immigration and Customs Enforcement's ("ICE") Intensive Supervision Appearance Program ("ISAP") which requires him to send weekly photos of his face via the ICE mobile phone application and comply with scheduled home visits and in-person check-ins. (*Id.* ¶ 39.) To the best of his knowledge, Petitioner has complied with the ISAP requirements. (*Id.* ¶ 40.) Occasionally, the application malfunctioned when Petitioner attempted to submit his weekly photo; in these instances, ISAP would send Petitioner a message that it had not received his photo and instructed him to submit. (*Id.*) Each time, Petitioner promptly complied. (*Id.*) Petitioner never received additional communications from ISAP, so he assumed he was in compliance. (*Id.*) Petitioner has complied with his other conditions of release, including appearing at his Immigration Court hearings, maintaining work authorization and employment, and remaining law-abiding. (*Id.* ¶ 41.)

On February 3, 2026, Petitioner appeared in Immigration Court for his individual merits hearing. (*Id.* ¶ 45.) The hearing was continued until July 29, 2026 because testimony was not completed. (*Id.*) On March 23, 2026, Petitioner received a message from ISAP, instructing him to report to ICE's San Diego office the next day or day after. (*Id.* ¶ 46.) When Petitioner arrived as instructed, an ICE officer told him that his bond was being cancelled and he was being re-detained for alleged ISAP reporting violations; specifically, the officer alleged he missed approximately five or six photo submissions and one scheduled home visit. (*Id.* ¶ 48.) Petitioner was re-detained and transported to the Otay Mesa Detention Center, where he remains in custody. (*Id.* ¶ 52.)

26cv2083 DMS MSB

## II.    LEGAL STANDARD

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a).  A petitioner prevails in her petition for writ of habeas corpus if he shows that his custody violates the Constitution or laws of the United States.  *Id.* § 2241(c)(3).  The writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004).

## III.    DISCUSSION

When determining whether Petitioner's procedural due process rights have been violated, the Court must consider:

> three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

First, Petitioner "invokes the most significant liberty interest there is—the interest in being free from imprisonment." *Munoz Materano v. Arteta*, 804 F. Supp. 3d 395, 416 (S.D.N.Y. 2025) (citation modified) (citation omitted).  Here, Petitioner was out on bond when he was re-detained and, therefore, had a liberty interest. *See Noori v. LaRose*, 807 F. Supp. 3d 1146, 1164 (S.D. Cal. 2025) (finding the petitioner "has a private interest in remaining free, which developed over the year he resided in the United States").  This factor weighs in Petitioner's favor.

Next, there is a high risk of erroneous deprivation of this liberty interest when noncitizens are re-detained without a hearing. *See, e.g.*, *Pablo Sequen v. Albarran*, 806 F. Supp. 3d 1069, 1089 (N.D. Cal. 2025) (citing cases).  Here, the ISAP message did not notify Petitioner why he was to report to ICE's office in San Diego—only when and where to arrive.  Petitioner was told the reasons for his re-detention by the ICE officer shortly before he was taken into custody.  He did not have an opportunity to contest the alleged

violations or the re-detention. He did not receive an individualized determination before or after being re-detained. Respondents do not contest Petitioner's allegations or argue that Petitioner was provided with adequate process before his re-detention. Thus, based on this record, it appears Petitioner was re-detained without any notice or an individualized determination, in which case, the risk of erroneous deprivation is high. For example, Petitioner could not contest the purported violations (failing to submit weekly photos on the ICE mobile phone application), despite the possibility that the application may have malfunctioned when Petitioner was attempting to comply. *Espinoza Palacios v. Hermosillo*, No. 26-CV-491, 2026 WL 686138, at *8 (W.D. Wash. Mar. 11, 2026). A pre-deprivation hearing would have been an appropriate forum to litigate such a factual dispute. Accordingly, the second factor—the risk of an erroneous deprivation of such interest through the procedures used—weighs in favor of Petitioner.

On the third factor, "[t]he government may have a 'strong interest' in detaining noncitizens during the pendency of removal proceedings as needed to protect the public from dangerous criminal aliens, or to prevent flight and thereby increase the chance that the aliens will be successfully removed." *Pablo Sequen*, 806 F. Supp. 3d at 1090 (citation modified) (quoting *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1208 (9th Cir. 2022)). However, when the Government previously decided to release a noncitizen and there is no evidence of any changed circumstance that might have caused the Government to reconsider that decision, its interest in re-detention is low. *Doe v. Chestnut*, No. 25-cv-01372, 2025 WL 3295154, at *10 (E.D. Cal. Nov. 26, 2025) (citations omitted). Here, Petitioner contends that he has no criminal record and, to the best of his knowledge, has complied with the conditions of his supervised release. Respondents do not state otherwise and provide no evidence to the contrary. Further, assuming Petitioner violated the ISAP requirements, "it would not necessarily follow that Petitioner can be detained for those violations without a hearing." *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025). "That the Government may believe it has a valid reason to detain Petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with

due process." *Id.* "While the government has an interest in enforcing immigration laws . . . it must pursue that interest 'in a manner consistent with the Constitution.'" *Munoz Materano*, 804 F. Supp. 3d at 420 (citation omitted). Thus, this factor also weighs in Petitioner's favor. Applying the *Mathews* balancing test, the Court finds that Petitioner's detention violates his due process rights. Accordingly, the Petition is **GRANTED**. The Court **ORDERS** Petitioner's immediate release.[1]

## IV.    CONCLUSION

Based on the foregoing, the Court **GRANTS** the Petition. Respondents shall release Petitioner within **24 hours**, and shall not re-detain Petitioner without first providing a pre-deprivation hearing before a neutral decisionmaker at which Respondents must prove that changed circumstances related to flight risk or danger warrant Petitioner's re-detention. Respondents are further **ORDERED** to file a Status Report within **seven (7) days** of the entry of this Order, confirming Petitioner has been released.

**IT IS SO ORDERED.**

Dated:  April 24, 2026

Hon. Dana M. Sabraw
United States District Judge

---

[1] In light of this determination, the Court declines to consider Petitioner's other claims for relief.

5

26cv2083 DMS MSB